Your Honors, before we start, I just want to make sure the appeal as to Sedgwick and Veritas was dismissed, and so Council, for that entity, wanted me to just confirm. Right. We did receive that notice this morning. Thank you. I should have pointed that out. I apologize. We did receive that. Thank you. And he cares enough he's going to stay and watch, right? You didn't pull that microphone down far enough. Sorry. My apologies. This appeal arises out of what we contend to be an abuse of discretion by the trial court in its granting of summary judgment to both MetLife and John Brown Insurance Agency. I think because of a lot of the verbiage that's devoted in the order of granting summary judgment to the factual allegations that were or were not pled, a good place to start is with the amended complaint that was filed in Oklahoma State Court prior to removal. Can I just preliminarily ask you, was Turner's evidence preserved before he died? Is it preserved in any way? Can Turner testify from the grave? Well, he can't through his deposition testimony. We do have his testimony. Absolutely. Absolutely. And so when you look at the amended petition and what was alleged starting with a statement of facts. Can I ask you to back up and talk about appellate jurisdiction briefly because we still have a pending motion to substitute was provisionally granted.  And that's been challenged. So I guess I have a couple of questions on that. One is, you know, Mr. Turner died in December. Correct. 2023. And the court entered summary judgment on some of the claims in February of 2023. Is that right? I believe it was March of 2024. 2024. I apologize.  And then I think March of March 1st of 2024 denied a motion for reconsideration that was filed. Right. And then ultimately you filed a notice of appeal on March 29th, 2024, three months after his death. Right. How did you do that without without his approval? Well, we had discussed prior to this. First of all, when the appeal was filed, I didn't know he passed away. We had discussed. Don't you have to get approval from your client to appeal? I did before before the order ever even came out. We discussed how on numerous occasions. You got OK. So before he died. We we discussed that if anything went south on the claim, it was going to be appealed. When do you think you would have contacted your client and after the judgment and said, hey, got this decision? And, you know, I think we should appeal. Was there not an attempt to contact the client? No, there wasn't, because it had already been discussed. And when I take a case like this, I make it very clear that we're not done until the last court tells us we're done. Well, none of that's in the record. I'm just curious as to how you would have managed to get through not only the judgment, but the notice of appeal. I don't think it's any different than several months into this court and finally have to be told by the insurance company that your client had died months before. Well, this case was pending for six years. We waited year after year after year. That's not my question. I'm wondering. And, you know, we have rules that require that you substitute, you know, party for a reason. Right. And the idea is that we need to know that the parties intend to be, you know, the appeal. And how do we have any knowledge as to whether he intended this appeal? Well, it's an asset of his estate. The estate intends to appeal it. It's no different than the slate court. It's no different than the ruling by the slate court. It didn't comply with any of our rules. You didn't comply with any of them. Well, how do I know if I don't know he's passed away, how do I know that it needs to be styled that way? Well, I guess normally somebody would be communicating with their client once they got a judgment in the district court and found out their client had died. Okay. Well, and I think that's taking more form over substance when it comes to the basis of the appeal. So it's not, again, you didn't indicate this in the record, but are you suggesting you didn't know until you were informed by the insured?  Several months into this appeal.  That your client had ceased before the district court ever entered judgment. Right. Okay. I just wanted to get the facts straight. Okay. And again, I think it's almost identical to what happened with the slate court. And the Tenth Circuit ruled that the four months was more than permissible and allowed substitution. Is that the same facts as this case? I think it is. Was counsel not aware until they were advised by the insurance company? Well. And did the individual die before the district court judgment ever was insured?  The individual died before the district court entered judgment. The appeal was filed in his name. Subsequent to that, the attorney found out that he had passed away and then came back and substituted the PR, I believe it was, on behalf of the deceased. Okay. And the Tenth Circuit took no issue with the way that it transpired. The only difference is here it transpired that it was the appellee who filed the notice of death. Well, and that's what happened with the slate court, too. Okay.  And so. So your position is it's the same facts as slate? Absolutely. Okay. I've got a lot of ground to cover. I'm going to start with. Let me help you start.  Where I'm curious. And that is this change from the admitted complaint to your response to the summary judgment. As I understand it, the explanation of that change was what was discovered, what came out in discovery. Is that correct? No. I don't think that's correct. You said that in your brief, didn't you? I said there's additional evidence that was confirmed through discovery. But if you look at the allegations made in the amended petition. I'm talking about evidence. What? The evidence that was. What was it that you discovered? Didn't you say that there was something in discovery that indicated that you should be taking a different approach in responding to the motion for summary judgment than you took in the amended complaint? And I think that had to do with the Sedgwick and Veritas claims that had been dismissed. As to MetLife, the allegations from day one was that there was an unreasonable delay of payment of the benefits and an unreasonable delay as to the investigation of the claim. That was, we got more detail of that through discovery. But if you look at the allegations. So why didn't you amend the complaint? Because I didn't need to. It's already in here. If you look at paragraph, if you look at paragraph 11. At the time of the covered loss, plaintiffs had in place a policy of business insurance written by defendant MetLife. Said policy provides coverage for the damages to plaintiff's property. That property from paragraph 10 included the building, its contents, the business's necessary equipment, tools, and important business papers. It's all right there. It didn't need to be amended. Where did it say that the contract of insurance should be changed so that it covers complete replacement costs rather than a limitation to $100,000? Under the reformation. And I think, I know why your honor is going where he's going. I think that was not argued clearly. I think the request for the reformation based on the constructive fraud goes to the breach of the duty. Okay, so you discovered this all of a sudden. Well, it's not pleaded very well. Shouldn't I file a second amended or seek to file a second amended complaint? But it is pled well. That's what I keep going back to. Okay. Well, I mean, if you look at the amended petition, it lays all of this out. Nothing has changed. Every type of coverage, although not specifically named, is mentioned. Does it say that replacement costs, unlimited, are either part of the contract or should be part of a reformed insurance contract? Yes. In what paragraph? In paragraphs 14, 15. If you look at count two, under the reformation of the insurance policy, at the time of the agreement, MetLife's agent assured plaintiff. You said 14, 15. What other paragraph? Under count two, starting with paragraph 30. On paragraph 33, at the time of agreement, MetLife's agent assured plaintiff that the policy he purchased contained replacement cost coverage. It did? It did. Limited to get to $100,000. That doesn't address the problem we have. It was a replacement policy, but it was limited to $100,000. And that's not a replacement cost policy. Of course it is. It's not if the replacement cost is three times that. He was led to believe that the replacement cost is what they are calling a guaranteed replacement cost. There's a phone call between these two, recorded, while they are in the agreement process, where the agent talks about it being $100,000 replacement cost, which she calculated based on his materials he provided, $50-some-thousand being the value. And that's what she refers to it as. And she sends him an offer with the $100,000 replacement cost limits. And he says okay to all this. And that comment was made.  But it's not being read in context. If you read it in the context of the finding of the Oklahoma Insurance Department, those are statements made, misrepresentations made, based on the value of the note. He was led to believe that there was additional coverage to replace the building. Was he asked in his deposition anything about this unlimited replacement cost concept? He was asked about this guaranteed replacement cost term. And his testimony was that in light of the representations made by the unlicensed commercial insurance adjuster, that he was led to believe that that was over and above the $100,000 limit that had been placed on the structure before the renovation. It's clear from all of the evidence that both he and Maria Dosa, neither one of them understood completely what type of replacement cost coverage there was. Is his deposition in our record? Yes, sir. Okay, good. Absolutely. Do you agree that your reformation claim, whether you want to base it on mistake or some type of fraud theory, has to be pled with particularity? I think it depends on if it's a constructive fraud or whether it's an actual fraud claim. Actual fraud does have to be pled with particularity. A constructive fraud claim that doesn't require any type of animus or intent does not have to be. And if you look at the gentry holding from the Oklahoma Supreme Court, in that case the adjuster told the insured that theft was covered. They'd come to find out embezzlement was excluded. Even though the finding from the court was that there was no evidence that it was an intentional misrepresentation, the fact of the matter was it was a misrepresentation that they both relied on. And that gave grounds for the reformation. So are you saying the agreement that preceded the insurance policy for purposes of meeting the requirements of reformation was between this person at the agency? Correct. The commercial adjuster, or the commercial agent, who under Oklahoma law binds MetLife. And you say that she agreed then that the coverage would be unlimited. That's what Mr. Turner's testimony was. She's AWOL. No one's been able to find her. But in her subsequent recordings and emails after the fact, after the loss, she tells Mr. Turner, I've never heard of this type of replacement cost coverage that limits to that $100,000 amount. I don't know what they're talking about. They must be wrong. The problem you have is that she said something different in the recorded calls ahead of time. And when you're looking at reformation, you've got to have clear and convincing evidence. And we can't ignore all those recorded calls. We can't ignore the email that spelled out on his face, replacement costs up to $100,000, he accepted. You can't ignore the call where she said you've got replacement costs up to $100,000. Even if she later says to him in a call four months after he's been paid, hey, I think you had full replacement costs. That turns out to be wrong. What you have is inconsistent evidence. And what you need to have for reformation is clear and convincing evidence. And that's why Judge Broome said, even if you could amend the petition to properly seek reformation, it would be futile because there's no clear and convincing evidence here that that was ever the agreement. And I guess I'd like you to address what is clear and convincing about the evidence. How was Judge Broome's wrong about that? Because the clear and convincing evidence, based on all the facts that were submitted, was that these two individuals had a much different idea of what was being agreed to and what was being sold and purchased than what he, in fact, got. You're not addressing the inconsistent evidence. You're addressing what happened after four months after the payment. You're not addressing the evidence of what they agreed to prior to the agreement, and you can't ignore that. And I'm not trying to ignore it, but you also have to understand and appreciate that not all the recordings were produced. Some of them were missing. You never produced any other recordings. There's no evidence that there were any other recordings, just your allegation that there could be. Well, there's evidence that other calls had occurred that no recordings were provided for. What we have is a recording where she says you have $100,000 in replacement costs, and she's based that on figures she asked him for based on the value. And then you have an email going to him that says that very clearly, and then you have him accepting that. How is that evidence, when combined with the confusing phone calls that occurred after, how does that reach that clear and convincing thread? How did we get there? I don't know if you do, to be honest, but that's not dispositive of the entire bad faith claim. There's lots more coverage that he had bought that was alleged he had bought that wasn't paid, that was minimized. We've got situations where on February 13th, the day after the fire, the adjuster is recognizing that the business property loss was due and payable for $25,000. It takes more than four months to get that check. The scissor lift, more than six months to get that check after it was determined to be owed and dued. You've got a situation where the business interruption coverage, they use the four lowest months out of the year to calculate his average income. Yeah, let's talk about that. Because the problem that the district court found on the business loss was that it's your burden of proof to show the loss. Right. And you never did that. And all there is, is in your response brief, a paragraph saying, we disagree with how they calculated our loss. And then you drop a footnote coming up with a, you know, saying we think it should be this. But all of that. With no citation to the record. And the district court said that does not controvert the uncontroverted statement of fact. And so I need you to address. There was citation to the record. I need you to address what was in the record as to your view of what the loss was. The deposition. As far as what? I didn't hear that last part. The plaintiff's statement of loss. Okay. You had the deposition testimony of Hignight, the forensic accountant that performed the evaluation. You have her deposition testimony. And what did she say that the loss was for business? A little over $2,000. Based on. Where did you cite to that? It's in the supplemental. Are you talking about the plaintiff's or the defense expert? No. It was a forensic accountant that met life contract. I understand that. I'm talking about where is your proof of what you say the loss was. It's in her testimony. If you look at the supplemental. In their expert's testimony? No, no, no. There was no. It doesn't involve an expert at all. It involves the deposition of their forensic accountant. Right. Who came up with the loss figure. Right. That's what they said in summary judgment. And in her deposition testimony that cited and made a part of the record. I think it's exhibit 35. I understand all that. I'm asking. She concedes it. The math work is discussed starting at page 59. The math work. That's what I'm trying to get to. What we have is a footnote in a response brief challenging the calculations that she made saying that she shouldn't have taken four months that she took and used those as the average. Right. That's the argument.  And there's nothing. And Judge Brubes was very specific about this. There's nothing cited. There's no other calculation made. There's nothing where you say here is our statement of the loss. And here's how we prove this loss and that it's different because or it's this amount because of it's caused by the fire. Which is your burden. Well, I don't necessarily agree with that. It's the burden of the insurance carrier. It's their duty to come up with the correct numbers using correct formulations. She concedes that that didn't happen. And they proposed that. And I'm asking you what your response brief. You disagree with their statement, but you don't cite to anything in the record that shows anything else. And I think the citation to Hignight's deposition testimony where all of this was discussed is absolutely part of the record and supports our contention there. Okay. Okay. I think I see your response. Thank you. I'm way over time. There's a lot. There's a lot left, but I'm out of time. Good morning, Your Honors. My name is Allison Howard. I'm counsel for Appley Metropolitan Property and Casualty Insurance Company. I'll be splitting my time with co-counsel for Appley John Brown Insurance Agency. I've reserved nine minutes. Preliminarily, Metropolitan contends that the appellant has failed to secure this court's jurisdiction. And just to address briefly, the appellant suggested that the Slade case is on point. It is not. The Slade case did not address the jurisdictional issue before this court in that, in Slade, what was before the court was the issue of whether or not the counsel needed to file a motion to substitute at the district court level, as opposed to in this court when the plaintiff had died prior to entry of judgment. The court did not address the issue before the court now, the jurisdictional issue, which is whether or not the notice of appeal is jurisdictionally defective because it does not name a live and proper appellant. This is what I don't understand. I just don't see the problem with Rule 3-7 and Rule 43-8. We know who the appeal was intended for. I mean, there's one for Turner. And if Turner is not there, whoever his personal representative is. In some cases, you know, there's authorization for the lawyer to file a notice of appeal. And Rule 43 indicates that there's no, well, there's no time limit, say it in Rule 43, when the death of the parties after the notice of appeal is filed. I just don't see how we lose jurisdiction under Rule 3 or 43. So if you can tell me, walk me through Rule 3 and 43 as to why we have no jurisdiction.  Rule 3, as the Supreme Court has stated, is a strict jurisdictional requirement that the party be named with specificity. And here, the party who was named in the notice of appeal was Mr. Turner. Yes. Okay, there is relaxation of that rule since 1991 to allow, as long as you can show that there was clearly objective intent that the person named was the person intended to be the appellant. Okay, who could it be other than Mr. Turner or his personal representative? Sure. This is where Rule 43-A-2 comes in, which would require the named appellant to be either his attorney or a personal representative. And the appellant who was named was not Mr. Turner's attorney. That's who should have been named if there wasn't a personal representative. But he says he didn't know. Exactly. He says he didn't know his client had died before the judgment was ever entered. Sure. So how does that change the scenario? Under the rule, it doesn't seem to matter. Well, the rule, again, is a strict rule. And so if he's not named, he's not named. The fact that he didn't know his client had deceased doesn't make any difference to a strict – if you're going to strictly apply that rule, what he should have done – If he doesn't know his client is deceased, how is he supposed to file it on his behalf, which is one option, and presumably indicate he's filing on behalf of his deceased client before an administrator is appointed? Or two, he has to move to substitute the estate. Sure. Well, he first of all should – If he doesn't – well, that's a different question. But does that make any difference? If he doesn't know, and he didn't know until you told him, how is it that he was supposed to substitute? The fact he doesn't know I don't think makes any difference. I think the notice of appeal is strictly – applying Rule 3 strictly as it should be, it doesn't make any difference that he didn't know. I think it's jurisdictionally – not think, I believe, and we contend that it's jurisdictionally defective because it doesn't specifically name a live and proper appellant. And that appellant should have been – It presumes knowledge because it says if, before a notice of appeal is filed, if the deceased has died, the attorney is either going to temporarily bring the notice or we're going to have an administrator. That's what it says. So it assumes there's knowledge. Yes. You say it doesn't matter, but it assumes knowledge. That's what I mean by it doesn't matter, is because it does presume knowledge. So if you don't have knowledge, how can the rule – Because knowledge is presumed, I guess is what I would say. So therefore, if it's presumed, then strictly applied, it's jurisdictionally defective. And then what happens is here he did gain knowledge and had an opportunity by the April 30th to seek an extension of the appeal deadline so that he might amend the notice to name a proper appellant. But that didn't happen. He says he didn't have knowledge until you informed him.  Yes, that's what I'm saying. We gave notice on April 17th. He still had 30 days after expiration of the appeal deadline to seek an extension of the appeal deadline. I.e., he had until April 30th to do so, but did not. It could have been sought an extension, amended the notice of appeal to name the attorney, even if they hadn't yet secured a personal representative, sought an extension of time in order to do that, and then filed a motion to substitute. That is our contention anyway, Metropolitan's contention. And again, Slade did not address this issue at all. In fact, the jurisdictional facts are not clear from Slade. But I'll defer to our – rest on our briefs on that issue and move on to the merits. Okay. If I pick up the deposition of Mr. Turner and read it, how is that going to inform me as to the merits of this case and as to the claims in the amended complaint and the change of approach in responding to the summary judgment? How is that going to help me, the Turner deposition? Sure. As to Metropolitan anyway, Mr. Turner does not actually allege that he was promised unlimited building coverage. He does not make that allegation, contrary to Appellant's contention. What he alleges in his complaint is that he was promised building coverage that would evaluate loss at replacement cost value rather than actual cash value. Those are cost valuation methods.  Now, make sure you distinguish between the amended complaint and his deposition when you're telling me what is said. Sure, I'm going to. I'm getting there. I'm trying to – Now you're on the amended complaint. I have to lay the foundation before I tell you what happened. Now you're on the amended complaint. Yes, which is the operative complaint. In that amended complaint, what he alleges is that he was promised replacement cost value versus actual cash value building coverage. And replacement cost value is the cost to replace covered property without deduction for depreciation. Actual cash value is the depreciated cost to replace covered property. So he's making a comparison between these cost valuation methods, and that comparison is the premise of all of his claims against Metropolitan relating to building coverage for reformation, breach of contract, and bad faith. What happened was, as he attested, he hadn't read the policy prior to making these allegations. And this is what came out in his deposition. He hadn't read it. He did subsequently concede, oh, the policy says what it says. And what the policy says is that billing loss is, in fact, evaluated based upon replacement cost value and not based upon actual cash value. And so at that point, he rehauled his case. And contends now that what he was really promised was guaranteed coverage, that he would get. But he's not saying this in his deposition, or he is? At that point in his deposition, he does say that. Okay, he changed. Yes. In his deposition. In his deposition. So in the earlier part of the deposition, he has one position, and then later he has a different position. Well, he didn't have, he hadn't read the policy until his deposition. That's where we went over his policy. And that's where he said, oh, okay. Well, really what I mean is that I was promised guaranteed, I was promised unlimited coverage of my building, guaranteed to replace it without regard to cost. That's a very, very, that's incredibly different from his allegations. However, the complaint was not amended at that point. The amended complaint was not, yet again, he didn't even move for leave to amend. Rather, in response to the Metropolitan summary judgment motion, two years into the litigation, months after expiration of the scheduling order deadline, and on the eve of this close of discovery, he asked the court to amend his case for him under the guise of conforming the case to the evidence. And to be sure, I wanted to note, though, that this argument as to amendment has been waived. I mean, appellant did not set forth the applicable standard of review in his opening brief that the court, the district court abused his discretion in denying leave to amend. So we would contend that that argument is waived, but even if it hasn't been waived, the district court acted well within its discretion in refusing to allow amendment under these circumstances. I mean, Mr. Turner didn't even move for leave to amend, as required by Rule 15A2. More significantly, he didn't show good cause to amend. After the scheduling order deadline as strictly required by Rule 16B4. So are you suggesting that by the time of his deposition, or at least during his deposition, he understood that paragraph 19 in what's the amended petition, we're calling it the plaintiff, but it's actually a petition that was filed in state court, that what he said there wouldn't have been accurate, which is that MetLife paid plaintiff what it determined was the actual cash value of the building, far less than the replacement value plaintiff was owed. Yes. So because he now understands that what he was paid was the $100,000 limit. Yes. To replacement costs. That's correct. Okay. My time, I'm way over time. I apologize if you don't have any other questions, I will pass to my co-counsel. Any other questions? No. Thank you, your honors. My name is John Steiner, and I represent the defendant and appellee John Brown Insurance Company, and I assure you the best has not been saved for last in this instance. My take on this case is slightly nuanced. It presents as an insurance dispute, but in my humble opinion, it's really a civil procedure question that is first and foremost before the court, as well as one of appellate jurisdiction. Taking the appellate jurisdiction issue first, I have a slightly different take on the situation. The appellants have made much of the fact that the Cervidone case from the Second Circuit made clear, and I agree, the text of Rule 43A2 does not contain a time limit on a motion to  substitute. I think the question is more succinct than that, and that is if you are going to file a motion to substitute, that presupposes that at the initiation of the appeal, there was a proper appellant. And Rule 43A says in the case of a deceased appellant, who is deceased prior to the entry of the district court's judgment, there are two methods to do that. One is a personal representative can be named as the appellant. That did not occur in this case. The second is the attorney for the appellant can file the appeal. But that's what the difficult issue before the court is, is the text of 43A2 says that the attorney may file it, but it doesn't really go beyond that. In every case involving a representative appellant, the attorney files it. The question is, and in my view the answer is, is that the attorney in so doing must note, whether using the term pendente lite, pending the appointment of a personal representative in a state court proceeding, or in some nature, give clarity to the fact that the appellant is deceased, and therefore there is a live. I was going to say that. And where in rule 43A2 does it, how is that a foundation for what you're saying now? You didn't say anything. That's the difficult, there are very little case law. And the text simply says, I agree with you, Your Honor, the text simply says the attorney may file. And that is what we're here to try to figure out. Not based upon case law, there isn't any. The question. The attorney did file. He filed it, didn't know his client was dead. But I believe, Your Honor, that in a case in which an appellant has deceased three months prior to the entry of the judgment, there should have been some contact. Frankly, from my standpoint, your time is better spent on other issues. Okay. But according to rule 3C7, an appeal should not be dismissed for informality of form or title notice. It should be filed on behalf of the person intended. Who could possibly be intended other than the single plaintiff or the personal representative? Well, there couldn't have been. The personal representative wasn't named. Well, I understand that. But you know what I mean. Yes. We have one person, one estate, and that is solely the source of an appeal, dead or alive. But I don't think he can appeal if he's dead. I think a jurisdictional issue is different than a fairness or what did he know or that sort of thing. But you're correct. I believe, as you do, that my time is better spent on the other issue. My client was. Time is up. So there will be no time. Thank you, Your Honors. Thank you, Counsel. We appreciate the arguments. The case will be submitted and the counsel are excused. And the court will be adjourned until tomorrow morning. We're in recess until tomorrow morning at 9 a.m. Thank you.